## PRIORITY OF LIENS.

THE CALDWELL BUILDING & LOAN ASSOCIATION v. BIGLEY ET AL.

[Circuit Court of Noble County.]

Decided, December Term, 1903.

*When Lien of Reformed Mortgage Commences.*

Where an action is commenced by the mortgagor against the mortgagee, upon an imperfectly executed recorded mortgage, for the purpose of having the same reformed and for sale of the premises.

*Held:* That judgment liens, obtained after the commencement of the action and before decree reforming the mortgage, do not have a preference over the mortgage lien, and that the claim of the mortgagor should ·be first satisfied out of the fund arising from the sale of the property.

Cook, J.; Laubie, J., and Burrows, J., concur.

Appeal from Court of Common Pleas of Noble County.

On the 14th day of January, 1902, the defendant, J. N. Bigley, contracted with the plaintiff, The Caldwell Building & Loan Association, for a loan of one thousand dollars. On the same day he delivered to plaintiff a bond and mortgage purporting to be signed by himself and wife in the presence of two witnesses and duly acknowledged for such loan, and the money was paid over to him. As a fact Bigley was the only one that signed the bond and mortgage, he having forged the name of his wife and the two witnesses to the mortgage, as also the name of the notary public to the acknowledgment, and fraudulently caused the seal of the notary to be attached. The mortgage was left for record with the recorder of the county the same day it was received, January 14th, 1902. The defendant, Daniel Swickard, on the 23d day of July, 1902, obtained a judgment before the Mayor of the Village of Caldwell against the defendant, Bigley, and on the same day filed a transcript with the Clerk of the Court of Common Pleas of Noble County; caused an execution to be immediately issued from said court, and on the same day it was duly levied upon the real estate described in the mortgage given to plaintiff. Alonzo Hall, another defendant, on No-

vember 20, 1902, recovered a judgment by consideration of the Court of Common Pleas of Noble County against the defendant, J. N. Bigley, which was on the same day levied upon the same property.    On September 16, 1902, the defendant, Emily Baker, obtained a judgment before the same court of common pleas against the defendant, Bigley, which was on the same day levied upon the same property.    July 28, 1902, the plaintiff, building and loan association, filed a petition in the Court of Common Pleas of Noble County on its mortgage to foreclose the same and for equitable relief, setting forth that the bond and mortgage was duly signed by the defendant, J. N. Bigley, and purported to be signed by his wife and two witnesses and to be duly acknowledged.    After the levying of the executions as hereinbefore stated, the plaintiff filed an amended petition making said parties defendants to the action, setting forth in detail the facts in relation to the mortgage as to the forgeries and asking that it might be reformed; decreed to be a contract for a mortgage, or an equitable lien; also that the premises might be sold as prayed for in the original petition and the proceeds applied to the payment of its claim in preference to all others.    To this petition all of said defendants answered claiming that their liens were superior to plaintiffs.    The property was sold by consent of all parties, the proceeds brought into the court of common pleas and the question to be determined is as to the priority of the liens.    The property did not sell for more than sufficient to pay the claim of plaintiff, and if the claims of defendants, or any of them, are superior in equity to its claim, the same will not be wholly satisfied.

It must be conceded that the mortgage of plaintiff was wholly ineffectual as a lien against third parties.    It being neither executed or acknowledged in accordance with the statute its record was illegal and gave it no priority as against subsequent execution creditors (R. S., 4133, *Bloom et al* v. *Noggle et al*, 4 O. S., 45).    At the same time it was good as between the parties as a mortgage or a contract for a mortgage giving the mortgagee a lien upon the property as between the mortgagor and mortgagee.    *Bloom et al* v. *Noggle et al, supra; Van Thornley* v. *Peters et al*, 26 O. S., 471.

The question then arises, what is the legal effect of the plaintiff commencing its action to enforce its lien upon the property against the defendant, J. N. Bigley, who was the owner of the property? The action was not *in personam* in any sense but *in rem;* it was not for the purpose of obtaining a judgment or other relief against the defendant, but only that its mortgage might be perfected and foreclosed, or that the contract of Bigley might be specifically enforced by the sale of the property to pay the claim of plaintiff. It is conceded, as it must be, that the mortgage might be divested of the fraud perpetrated by Bigley upon the association and be reformed so as to make it comport with the true contract made by the parties; but it is insisted that the action has no effect as to third parties, until such reformation takes effect by the decree of the court made in the action and the judgments and levies having been obtained before such decree that the defendants have the prior lien.

In support of this position the decisions of *Bloom et al* v. *Noggle et al, supra,* and *Van Thornley* v. *Peters · et al, supra,* are invoked.

In the latter case it is held:

"A defective mortgage when reformed will not affect the lien of a judgment rendered between the date of the execution and the reformation of the mortgage."

In the opinion McIlvaine, J., says:

"1. A mortgage defectively executed is not entitled to record under our registry laws. 2. An unrecorded mortgage, or a defectively executed mortgage, whether recorded or not, does not vest in the mortgagee any interest in the premises, either legal or equitable, as against subsequent purchasers, or judgment creditors of the mortgagor. 3. As between the parties to such mortgage, whether it be duly executed and not recorded, cr defectively executed and recorded or not, equity will give it effect, acording to the intention of the parties. 4. A defective mortgage, when reformed, will not affect the lien of a judgment intervening between the date of the execution and the reformation."

Not only in this case, but in a number of others of the same character decided by the Supreme Court, the language used

is "when reformed," but it will be observed that in all the cases in which the language is so used the liens of the third parties attached before the commencement of the action by the party holding the defective mortgage for the enforcement of his lien. Certainly such holding can not affect the provision of Section 5052 of the Revised Statutes.

By that section it is provided:

"When summons has been issued, or the publication made, the action is pending so as to charge third persons with notice of its pendency; and, while pending, no interest can be acquired by third persons in the subject of the action as against the plaintiff's title."

The provision is, "While pending no interest can be acquired by third persons in the subject of the action as against the plaintiff's title." The recovery of a judgment and levying of execution was the acquiring of an interest in the subject of the action against the title of the plaintiff, although that title may have been defective.

In *Tollerton* v. *Williams,* 30 O. S., 579, it is held:

"If a petition for divorce and alimony by the wife, specifically describes certain real estate of the husband, charging it with equities of the wife, and asking an injunction to prevent alienation *pendente lite,* and also equitable relief, and the decree therein is such as that from it, it may be found that the court acted on those equities and favorably thereto, the proceeding operates as a *lis pendens,* and the decree for alimony and settling equities will be a lien on the lands, preferable to that of a mortgagee who had actual notice of the proceedings for divorce and alimony, and whose mortgage was executed and recorded, pending those proceedings."

No injunction was granted in the action. Neither did the court in the decree find that there were any equities in favor of the wife except what arose out of the marital relation—the responsibility of the husband for the maintenance and support of the wife.

Wright, J., in the opinion says:

"But again in the divorce suit, this land was specifically described, an equity in it was claimed, an injunction asked to prevent the husband from disposing of it *pendente lite,* of all

of which Tollerton had notice when he took his mortgage, and in the decree the alimony was fastened upon the land.

"In the case of *Hamlins Lessee* v. *Bevans,* 7 Ohio (pt. 1), 161, which was a question of priority between judgments and a decree for alimony, the court say: When the object of a suit, in law or equity, is to recover specifically a described piece of real estate, the pendency of the suit is held to be notice to all the world of the claim, and a final judgment or decree in his favor over-reaches intermediate purchases—that is, purchases made pending the suit. So if the suit be against a trustee to affect his title to land as trustee, and a final decree be rendered to that effect, the land is bound from the service of process.

"In that case the court observe that the petition for divorce alleged no claim to any specific tract of land. It is said that a purchase from a defendant in a bill to enforce an equitable right of any kind will not confer a valid title. *White* v. *Tudor,* 2 Leading Cases in Equity, (pt. 1), 192.

"In the case before us the property is described so that any who chose to inquire might find out precisely what it is.

"In addition to the wife's equity her alimony is sought to be charged upon it, and an injunction is asked to prevent any alienation.. If that injunction had been allowed, it would not have been any further notice than the mere filing of the petition to Tollerton, the mortgagee. The notice of injunction would not have been served upon him, but upon the husband. These facts, it appears to us, make such a case that the mortgage must be considered as having been made *pendente lite,* and that it is a lien inferior to the decree."

In the original case as stated no injunction was granted. The court made no finding or entered any decree upon the claimed equities of the wife. The petition simply described the land and the decree was for five thousand dollars in gross as alimony and charged the same as a lien upon the land described in the petition; and yet upon petition filed to marshal liens and sell the land the court held as we have seen that the claim for alimony took preference over a valid mortgage obtained during the pendency of the suit under the equitable doctrine of *lis pendens.*

The case of *Barry* v. *Hovey et al,* 30 O. S. Rep., 344, was much like the case before us.

The principal controversy was between two mortgagees holding mortgages from the same mortgagor upon the same real

estate. Robert Barry held the first mortgage and it was first recorded, but had but one subscribing witness. The mortgage to John Barry was given after the mortgage to Robert Barry, and was duly executed and recorded, but was secured after the suit had been instituted by Robert Barry to reform and correct his mortgage, in which action a defective service of summons had been made. The syllabus of the case is as follows:

"In an action by a mortgagee against a mortgagor, to reform and correct a mistake in a recorded mortgage which had but one attesting witness, a summons was duly issued to the sheriff, who, without writing endorsed thereon, as required by Section 61 of the Civil Code, appointed one C to serve the same as required by law, and verified his return which was endorsed on the writ. *Held:* That such service and return by C, without being duly authorized by an appointment in writing endorsed on the writ, is not such a service as will charge third persons with notice of the pendency of an action as provided in Section 78 of the Civil Code."

Johnson, J., in the opinion says:

"The mortgage to Robert Barry, though first entered for record, having but one witness, was defectively executed, and did not, as against a subsequent valid mortgage entered for record, vest any interest either legal or equitable in the mortgagee. *Bloom* v. *Noggle*, 4 O. S., 45."

It follows therefore that the mortgage to John M. Barry, which was executed December 28th and entered for record December 30th, is paramount to that of Robert Barry, unless the proceedings instituted by him December 21st, 1872, to reform and correct his mortgage, which subsequently ripened into a decree to that effect, restores him to that priority to which he would have been entitled if his mortgage had not been defective.

The court below held that the proceedings by Robert Barry to correct his mortgage were *lis pendens* by the service made December 26, 1872, as amended at the June Term, 1873, so as to charge John M. Barry with notice of its pendency.

By the terms of the statute John M. Barry's mortgage took effect December 30th. At that date the petition had been filed, and summons issued and returned to the clerk's office showing

that it had been served in the proper manner by one John H. Camden, but showing no authority in him to make such service. The service was directed to the sheriff, but it had no appointment endorsed on it which would authorize Camden to serve it.

This presents the question whether a service made by a private person, under a verbal appointment, or one not endorsed on the writ, is such service as to make the case a pending action as to third persons, and if not, whether the amended return cures the defective service.

The Code, Section 78, provides that: When the summons *has been served* or publication made, the action is pending so as to charge third persons with notice of its pendency, and while pending, no interest can be acquired by third persons in the subject matter thereof as against the plaintiff's title, "in this case the plaintiff's title was an equitable one. If his action was pending, by virtue of the service made by Camden on the 26th day of December, then there is no error in this judgment, otherwise there is, unless the amended return cures the defect."

The learned judge then proceeds to show that the action was not commenced at the time John M. Barry took his mortgage and had the same recorded, by reason of the defective service of summons, and that the return could not be amended in the manner attempted after decree.

It would seem as if this case was conclusive upon the question. That after service of summons duly made and returned that no interest could be acquired by a third person in the subject matter of the action as against plaintiff's claim, and there is no question but that in this action summons was duly issued, served and returned before any interest was obtained by the execution creditors.

From these authorities it seems to us that what is said in the first paragraph of the syllabus of *Van Thornley* v. *Peters et al* with reference to the reformation of the instrument, has reference to the action for reformation and was in no way intended to qualify the generally accepted interpretation of Section 78 of the Code of Civil Procedure, now 5052 of the Revised Statutes.

Another question is made and that is that the amended petition not being filed until the judgment creditor's liens attached that no rights were acquired under Section 5052.

As we have stated the original petition was to secure plaintiff's rights in the real estate, which was specifically described. The object was to have its equities in the same determined. The amended petition was for practically the same purpose. There was no departure. The facts were simply set out more in detail and in no manner changed the cause of action.

In the case of *Lessee of Stoddard* v. *Meyers*, 8 Ohio R., 203, the syllabus reads:

"Judgment reversed pending a bill to subject land to satisfy it, and again recovered, the bill being continued, and a supplemental bill being filed to reach the case of the second judgment, an alienation after the reversal and before the second recovery, is affected by the *lis pendens*."

In the opinion Lane, J., says:

"The general rule that no alienation of property is permitted whilst a suit is pending in relation to it, either in law or equity, is familiar and well settled (3 Ohio, 542; 5 Ohio, 462). It is assumed that when the right to recover, in the bill in equity, was taken away by the reversal of the judgment, the suit ceased to be pending so far as to bind the property. We are not satisfied that this position is a sound one. No such distinction is to be found in the books. But the doctrine seems plain that by the institution of a suit the subject of litigation is placed beyond the parties to it; that whilst the suit continues in court it holds the property to respond to the final judgment or decree. This suit instituted in 1831 was regularly continued until the final decree in 1835. The supplemental bill was engrafted into the original bill, and became identified with it. The whole was a *lis pendens*, effectually preventing an intermediate alienation."

It follows that the decree must be that the claim of defendant, Daniel Swickard, be first paid out of the fund after payment of costs, and the balance not being sufficient to pay the plaintiff's claims in full, that residue be paid over to it.

Decree accordingly.

*McGinis & Dye*, for plaintiff.

*Spriggs, Kountz, Morris & Frazier*, for defendants.