Opinion of the court, by
Judge Sherman:
The complainants, the heirs at law of Israel Ludlow, deceased in 1811, being then infants,'filed their bill against Kidd and Williams, to obtain the legal title to a-lot in the city of Cincinnati. In 1817, the Supreme Court, upon the hearing, dismissed the bill upon the merits, the plaintiffs still continuing minors. In 1825, and within the time allowed them by statute, alter attaining full ager *510 they filed their bill of review, upon the hearing of which the decree •of dismissal was reversed, and the cause continued for hearing. In 1827, after the decree of reversal, a supplemental bill was filed, making the Bank of the United States, Shaw, and others, defendants, all of whom, except the Bank of the United States, have pleaded, that after the original decree, and before the filing of the bill of review, they severally purchased, for valuable consideration .and without notice, several parts of the lot claimed by the plaintiffs. The Bank of the United States have answered, that after the ■ original bill of plaintiffs was dismissed, and before the filing of .the bill of review, Kidd then having the legal title to part of said ■lot, leased it to Smith & Loring, for nine hundred and ninety-nine years, renewable forever, at a certain yearly rent; that Smith & Loring, for a valuable consideration, assigned and transferred their interest to the bank, and that neither Smith & Loring nor the respondents had notice of the claim of the plaintiffs. Those pleas and the answer of the bank have been set for hearing without replication, upon the ground that the matter alleged does not ^constitute a defense to the relief sought by plaintiff's, and they insist:
1. That the purchases were made lis pendens, and consequently ..are affected with notice.
2. That as to the leasehold estate, a lessee for years can not protect himself against the right owner, by showing he was a purchaser for a valuable consideration without notice.
The principle that the purchaser of the subject matter of a suit pendente lite acquires no interest as against the plaintiff’s title, whether legal or equitable, is too well established to be now questioned. Such sale as against the plaintiff is considered a nullity, and he is not bound to take any notice of it. The decree of the ■ court binds the property in the hands of such purchaser, although he is no party to the suit, and paid a full price for it, and had, in fact, no notice of the pendency of the suit, or the claim of the plaintiff. He is chargable with constructive notice of the pendency ■of such suit, so as to render his interest in the subject of it liable ;to its event. This rule may sometimes produce individual hardship in its application to a purchaser, for a full consideration, and without actual notice; but if it were not adopted aud adhered to, * there would be no end to any suit. The justice of the court would ,be wholly evaded by alienating the lands after snbpena served, *511 •and the suitor subjected to great delay, expense, and inconvenience» without any certainty of at last securing his interest. It is, for these reasons — reasons founded on public utility and general convenience — that the courts of equity of England and of the United States, whenever the question has been made, have uniformy held that he who purchases during the pendency of a suit is chargeable with constructive notice of the rights of the parties litigant, and •bound by the decision that may be made against the person from whom he derives title. This rule adopted by courts of equity from necessity, and in imitation of the common law, that when the defendant in a real action aliens after suit brought, the judgment in such real action will overreach such alienation, is yet considered as against a real and fair purchaser without actual notice, as a hard rule, and courts gladly avail themselves of any defect in the pleadings or proofs of the plaintiff, to prevent its operation upon such a ^purchaser. Sorrell v. Carpenter, 2 P. Wms. 482. This rule of constructive notice does not extend beyond the termination of the suit, and therefore it has been frequently held that a final decree is not notice of the matters in controversy, and intended to be settled by such claim.
As all the purchases were made after the decree of the Supreme Oourt in 1817, dismissing the original bill of the complainants, and before the filing of the bill of review, in 1825, it becomes important to inquire whether there was, during that interval of time, such a •Zis pendens as to charge the defendants with constructive notice? Eor if there was, their pleas must be overruled, and their interests abide the event of the suit between the original parties.
The complainants contend, that the decree of dismissal, in 1817, whatever were its terms, can not be considered as final, it being against infants. But as conditional, and subject to re-examination and correction, after they attained their age; and if this is not so, that the bill of review afterward filed, is so connected with the original suit that it will, by relation, be considered as pending from the filing of the original bill, so as to affect intermediate purchasers with constructive notice.
By provision of our statute, bills of review must be filed within ■five years after making the decree complained of, except in certain specified cases, of which infancy is one. A minor being allowed five years after he attains full age, to bring such bill. But a decree which puts an end to the suit, has not heretofore been considered *512 the less final because it was subject, within a limited time, to be-reversed upon a bill of review. The argument for complainants is, that the statute giving the infants a day after they became of age,, to file a bill of review, is to be taken as part of the decree itself, and considered as if the privilege was contained on its face; and that the legal effect thereof is, that it remains a matter pendente lite, until the rights reserved by the decree are extinguished. I do mot consider it at all important to determine in this case whether the statute is to bo so blended with the decree, as to be considered a part of it, for if the decree had, in terms, reserved to the complainants the right of showing cause against it, after they arrived at age,, it would not have had the effect of continuing the cause *until that period. A decree to be final, need not conclusively settle and determine all the questions litigated, or rights involved in the suit between the parties, but it must put an end to that particular suit. The decree of dismissal in the original suit has all the requisites of a final decree. It is so in its terms; it is rendered upon final hearing; the court adjudicate upon the equity of the parties, and find that equity in favor of the defendants, and that the complainants are not entitled to the relief which they seek, and decree a. general dismission of the bill, with costs. Nothing is reserved or left for further determination by the court, but the whole controversy between the parties is disposed of, and a final end put to that particular cause, and I can not perceive that the decree, being against infants, at all changes its character or alters its effect as to third persons. ‘ , '
The master of the rolls, in the case of Bishop of Winchester v. Beaver, 3 Ves. 314, in speaking of the infant heir of a mortgagor, observes, he may be foreclosed; that a decree can be rendered against him and he can do nothing but show error; that the person in whose favor the decree is, can “ go to market with the mortgaged lands, and the purchaser is only liable to be overhauled in the-account.”
It is, however, said that when the decree upon the original bill ispened or reversed, upon a bill of review, the cause proceeds upon the original pleadings, and is to be considered as pending from the service of subpena in the original suit, so as to affect all persons with notice. No judicial decision has been cited by the counsel; and the court have not, in their examination, been able to find anys where precisely this question has been determined. The complain *513 ants have, however, referred 'the court to two cases which they think are analogous, in principle, to this. The case of Martin v. Styles, cited by Chancellor Kent in Murray v. Ballou, 1 Johns. Ch. 578, and by the master of the rolls in Bishop of Winchester v. Paine, 11 Ves. 200, from Lord Nottingham’s Prologomina of Equity. The case is thus stated by Chancellor Kent: “ The bill was filed in 1640, and was abated by death in 1648; and a bill of revivor was filed in 1662, and the purchase was made in 1651; and yet as the purchase was, by relation of the’bill of survivor, made pendente lite, the purchaser was held bound.” And observes, that he does not cite *the case with approbation; and that it afterward came on in a now shape, and is reported in 1 Ch. Cas. 150. The master of the rolls, in the case in 11 Ves. 200, observes upon the facts of the suit then before him, that the suit was pending when the mortgages were executed ; but if the mortgagees had acquired their title during the abatement of the suit, there would have been great difficulty in charging them with notice as pendente lite purchasers, although there was an instance of its having been done; and he refers to, and cites the case from Lord Nottingham’s Prologomina. The case in 1 Ch. Cas. 150, said by Chancellor Kent to be the very case, in a new shape, stated by Lord Nottingham, is reported as an original bill between William Style, plaintiff, and William Martin et al., defendants; and the facts are detailed with great minuteness.
If the case, as reported in 1 Ch. Cas., is correct, and the facts were as they are therein stated, the question supposed by Lord Nottingham to have been decided, that a purchaser for a valuable consideration, made after the abatement of the suit, and before the bill of survivor, will, after survivor, by relation, be deemed as madepewdmte lite, could not have arisen. The plaintiff, William Style, never could, under any circumstances, have claimed the protection of the court as an innocent purchaser for valuable consideration; for his title was as devisee under the will of Sir Humphrey Style, the defendant in the original suit. It appears, also, that the suit was in full prosecution at the time the title of William Style accrued, and the civil war, and the infancy of some of the parties, are stated by the lord keeper as a sufficient excuse for the subsequent delay and procrastination; and the purchaser, William Style (if a devisee can at all be considered as a purchaser in equity, entitled to protection as such), was not a pa'rty to the sun cited from Lord Nottingham. The doctrine supposed to have been holden in that case, *514 that a purchaser for a valuable consideration, after the abatement of the suit by the death of one of the parties, and before revivor, is nevertheless after revivor, by relation, to bo considered as a purchaser lis pendens, does not appear to have been at all involved in the suit, is contrary to the rule that the doctrine of relation shall do no wrong to strangers, violates the principle adopted by Lord Bacon, and ever since adhered to, that suit must be in full prosecution, has *never been sanctioned by any subsequent decision, or maintained by any judge with approbation The court would not, perhaps, under these circumstances, find much difficulty in coming to the conclusion, if it were necessary to determine the question, that the case from Lord Nottingham is not a conclusive authority, that a bill of revivor so relates back to a suit abated by the death of one of the parties, as to bind an intermediate purchaser for valuable consideration without actual notice. But if it be admitted that the decision stated by Lord Nottingham is correct, it does not bear such a striking analogy to this case, as will clearly furnish a rule of decision for this. The abatement of a suit by the death of a party, is not the final end of it. The bill of revivor is for the purpose of bringing before the court some person responsible for costs, ,and who is capable of conducting the suit; and when it has done •this, it has performed its office. The suit, in all except the name of ■one party, is the same as before abatement, and goes on to final hearing in the same way as if the death had not taken place. There ¡is no decision of the court, except that the cause stand revived ; no .adjudication on the rights of the parties, merely an order that the ■heirs or representatives of the deceased party, or other proper per- • son, be permitted to proceed with the cause. It is not, in substance, ¡the commencement of a new suit, but a proceeding in the old one, rendered necessary by the death of one of the parties, and may be .assimilated in its effect and operation to any of those numerous dedays which often occur in the progress of a chancery suit, either from the course of the practice of the court, or the neglect of the parties. But in this case, there was a decision of the court upon the rights of the parties, and a final decree pronounced, putting an end to the cause, and so long as that decree remained unreversed, •it was conclusive upon the parties as to the matters determined. In the case of abatement and s ubsequent revival, there is a formal termination, but substantial ly a more continuance of the suit, while .in such a case as .this, there is both in form and substance a final *515 decree, putting an end to the cause, though that decree was, as in every other case, liable to be reversed upon a bill of review.
*The other case relied on by the complainants, as analogous in principle to the present, is the case of Stack pole v. Gore et al., in the House of Lords, 1 Dows. 19. It appears by the report of that case that a decree was obtained in 1733, by fraud and collusion, between a tenant for life and others, without making the remainder-man a party, for the sale of certain mortgaged lands. In 1796, immediately after the tenant in tail became entitled to the possession of the promises, he filed a bill to set aside the decree and the sales under it. In 1801 the bill was dismissed by the chancellor of Ireland, and an appeal taken to the House of Lords. After the decree of the chancellor dismissing the bill, part of the property was incumbor.ed with portions and jointures by a marriage settlement. Upon the appeal the decree of dismissal was reversed and a decree given in favor of the plaintiff, the tenant in tail, against the purchaser, under the decree of 1733, on the ground that he not only knew of, but largely participated in practicing the fraud by which the decree for a sale was obtained. Lord Redesdale, in giving his opinion in the House of Lords, and it is the only part of the case at all applicable to this, observes : “ One of the cases was, however, rather stronger than the rest; it was a marriage settlement made after the dismissal of the bill by Lord Clare, but still it was a transaction pendente lite, since it was still a question for their lordships’ consideration whether the bill was rightly dismissed, and the party thus having notice must take the settlement,subject to all its legal and equitable consequences; such a circumstance would not be allowed to intercept the course of justice.”
Appeals, in chancery proceedings, from an. inferior to a( superior tribunal, have been long established in our system of jurisprudence, and one of familiar and daily occurrence in our practico, and it has never been supposed that the appeal was anything other than a proceeding in the original cause, and that a purchaser, after a decree in the common pleas, was nevertheless liable to bo affected by subsequent proceedings, upon appeal to the Supreme Court, should the decree be there reversed or altered. The appeal has the effect of continuing the cause and suspending or vacating the decree of the inferior tribunal until the cause is heard *in the appellate court. The appellate jurisdiction of the House of *516 Lords, in England, in chancery cases, is very similar to that exercised in this state by the Supreme Court, and the manner of effecting an appeal, and the consequences thereof are, in many respects, not unlike ours. A petition of' appeal must be signed by counsel and presented to the clerk of the house within fifteen days after the decree' is pronounced, if the house be then in session, and the party appealing must enter into a recognizance, in the penalty of two hundred pounds, to pay such ebsts to the opposite party as the court shall direct, and is then permitted to take out a caveat to stay the signing and enrolling of the same. Upon the hearing of the appealed cause no new evidence is admitted, differing thus from our practice, and the decree of the lords is sent to the court of chancery to be carried into execution. It is, in effect, a rehearing of the cause by a superior tribunal, and not the institution of a new proceeding, to get rid of a former final decree. If an appeal be taken from the rolls of' the chancellor, and from the chancellor to the House of Lords, it is, in its progress, through these various tribunals, the same suit pending and undetermined, and we can not perceive any analogy it bears to a bill of review to reverse a decree signed and enrolled, for errors apparent on its face, brought many years after the decree complained of was pronounced.
The decree dismissing a bill generally puts an end to that suit; the parties are no longer in court, nor is the cause any further under the control or subject to the direction of the court, and the circumstance that the decree was against infants, who have a right, by statute, to have that decree re-examined after they attain their age, nor the fact that .the decree is afterward reversed, upon a bill of review, will not have the effect of continuing the original suit, so.as to ovorreach intermediate purchasers and subject them to the operation of the rule, that he who purchases a right then under litigation is chargeable with notice, and bound by the decree that may be rendered against the person from whom he derived title.
The case of Kittleby v. Lamb, 2 Chan. 404, quoted and recognized by Lord Eedesdale in Bennet v. Hammill, 2 Sho. & Laf. 566, although it involved no question of notice, *is an authority to show that á bill of review can not, by relation, be so connected with the original suit as to affect intermediate acts done in good faith. That was a bill praying that a certain sum of money, in *517 the hands of trustees, might be laid out for the benefit of plaintiff. The bill was dismissed, and afterward the trustees paid the money to the other party who claimed it. On bill of review the former deeree-was reversed, yet the court determined that the trustees, who relied on the decree of dismission signed and enrolled, were protected in the payment they had made, and that the plaintiff must look to the person to whom the trustees paid it, on the ground that the decree, while it remained in force, bound the rights and justified the trustees, though they paid it voluntarily and without suit.
I have not noticed the argument presented by the defendant’s counsel, that the original bill having been dismissed, generally is to be considered as equivalent to a decree establishing the equitable as well as legal title of Kidd and Williams to the lot in dispute, at least as against the complainants, and that the defendants may be considered as purchasers, under a decree, because I have deemed it unnecessary, and that the question did not properly arise in this case. The general principle that a purchaser under a decree shall not be affected by error in the decree, and that he has a right to presume the court has properly investigated and decreed the rights of the parties, is readily admitted as correct, but it only applies to sales made under and by the decree of the court. In this case there was no decree for a sale, nor any conveyance directed, or other act ordered to bo done to perfect the legal title, The defendants in the original suit, having the legal title to the lands in dispute, and the court find the complainants had no equitable rights superior, made the only decree which in such a case could be made, that is, dismissing the bill. A purchaser from those defendants, in tracing the title from the first patentee to them, would find nothing to direct his attention to that decree, as their title was independent of it, and he could not, therefore, be presumed to have advanced his money on the faith due to a decree of the highest judicial tribunal. Nor have I conceived it at all necessary to consider whether, when a decree, directing the title of an infant to lands to be conveyed, *which by our laws has the effect and operation of a.conveyance, shall be afterward reversed by a bill of review by the infant, an intermediate purchaser who must necessarily trace his title through such decree, can be charged with notice of the rights of the infant, so as to deprive him of the protection given to an innocent purchaser.
*518 The only remaining question is, whether the Bank of the United States are innocent purchasers, in the possession of that part of the premises, which they hold as assignees of a term for nine hundred and ninety-nine years, renewable forever. It is said by the counsel for complainants, that it is indispensable to this, defense that the party should claim the fee simple estate, and should fully pay the consideration money. In order to sustain a plea of purchase for valuable consideration without notice, there must be an averment that the. purchase was made from a person seized, or pretending to be seized, in foe, and that the purchase money has been truly and fully paid. But I know of no ease going the length of deciding that the purchaser must claim afee simple estate to avail himself of this plea. If a person seized, or protending to be seized, in fee of lands, lease them for a term of years to another, who assigns his interest to a third person, such third person, as well as the lessee, is a purchaser entitled to protection in the enjoyment of his estate, however small, if he otherwise bring himself within the rule. But whatever may be the technical rules applied to the plea of an innocent purchaser, or whatever averments may be necessary to sustain it, they have no application to the same defense made by answer. A plea of innocent purchaser, with all its necessary averments, is intended not only to protect the defendant in the possession of that which he holds, but to prevent the chancellor from exercising jurisdiction to deprive him of any advantage he may have at law, however obtained, or take any step, or afford any aid against him. Jerrard v. Saunders, 2 Ves. jr. 254. But when he defends himself by answer, he must make out a case, showing that in equity and good conscience his claim to protection is equal to the complainants to relief, to prevent the court from interfering against him.
There are many cases where courts of equity have protected Iona fide purchasers of leasehold estates, and of goods assigned, and indorsers of bonds, notes, bills of exchange, *bills of lading, etc., in the possession and legal right they have obtained, without notice of adversary claims. The cases of Sorrel v. Carpenter, 2 P. Wms. 482; Tolland v. Stanbridge, 3 Ves. 485; Nugent v. Gifford, 1 Atk. 463, were cases whore the defendants protected themselves as innocent purchasers of leasehold estates; and the same doctrine is recognized in Le Neve v. Le Neve, 3 Atk. 646, *519 although the purchaser of a leasehold estate in that case was chargeable with notice, and of course could not protect herself.'
The case of the Attorney General v. Backhouse, 17 Tos. 283, cited and relied on by the complainants’ counsel, furnishes an apt illustration of the doctrine of courts of equity upon this subject. In that case, it appeared that the trustees of a charity seized in fee, in that character, of some lands, demised them, in 1775, to J. Goad, for eighty years. Goad, in 1776, rented part of the promises to Gurney for sixty-four years. Goad died in 1699, and his executors sold the residue of the leasehold premises, by auction, to the defendant Backhouse. Gurney’s lease was sold by his representatives, and finally came to the defendant Shepherd, who claimed in his answer, that he was a purchaser for valuable consideration, without notice of any fraud, in the original lease from the trustees, and asserting that neither Gurney nor his assignees had notice of the lease under which Goad derived title. The chancellor, after laying down the rule, that to sustain a plea of purchase for valuable consideration without notice, there must be an averment that the party purchased from a person seized, or pretending to be seized in fee, goes on to show that the lease by the trustees to Goad may be such an abuse of the charity estate as to render it void, and observes that “if, therefore, the transaction between Goad and the charity, can be avoided, yet Gurney” (the under-lesseoj “having given a fair consideration, and held undisturbed possession from 1775 to 1803, sales and mortgages having taken place without question, for a period of thirty-five years, the interest of the charity itself, upon all reasonable and equitable principles, requires no more than that I should transfer to the charity the interest.acquired under that bargain.” And he refuses to set aside the in: terest which Gurney acquired by his lease, and protects the sub-lessees, who had given a fair ^consideration, in the interests they had acquired, merely directing them to pay the rent to other persons than those to whom they had contracted to pay it, if it should appear on the inquiry which he directed that the charity ought to receive it. In the late case of Nedfearn v. Forrier et al., 1 Dows. 50, upon appeal to the House of Lords, it was held that a latent equity in a third person should not defeat a bona fide assignee of aright, without notice; and the same doctrine is recognized by Chancellor Kent, in Murray v. Lylburn,2 Johns. Ch. 441. The cases of assignment by operation of law, as assignees of *520 bankrupts, form an exception to this rule, such assignments passing the right, subject to all equities, and the assignees being in the same plight and. condition as those from whom they were derived.
Id this case it appears that Kidd, at the time he leased part of the lot to Smith and Loring, was seized, or pretended to be seized of a legal estate in fee to it; that neither Smith and Loring, nor the bank, at the time they respectively purchased, had notice of the claim of the complainants; that valuable improvements have been made by them, whereby the property is greatly enhanced in value, and that the bank paid a large-sum to Smith and Loring for the leasehold estate. Under such circumstances, a court of equity can not interfere and deprive them of their interest in the property, in favor of a latent equity, unknown to them when they purchased. The most the court could do, would he to follow the example of Lord Eldon, in the case of the Attorney General v. Backhouse, before cited, ordering these defendants to pay to the complainants, the annual accruing rent, instead of the person to whom they contracted to pay it, if, upon the final hearing of the cause against Kidd’s executors, the court should be of opinion the complainants were .entitled to it.
The complainants having asked leave to reply to the pleas and answer, if the court should be of opinion that the matter contained in them was a defense to the relief sought, and the court being satisfied that the complainants are not entitled to relief against the defendants, upon the pleadings, they will be permitted, under the circumstances, to file such replications as they may be advised.