# CHARLESTON

PERKINS *et als. v.* PFALZGRAFF.

Submitted June 15, 1905.   Decided April 10, 1906.

1. LIS PENDENS—*Final Decree—Reversal of Judgment—Effect—Bona Fide Purchaser.*

   H. J. F. made his will devising all his real estate to C. E. H. and L. F, C. trustees and providing that one-fourth should go to H. F., one-fourth to the lawful children of P., one-fourth to the children of H., and the remaining fourth to the children of C.; by codicil the testator afterwards revoked the devise to the children of H. and the children of C. and died intestate as to said two-fourths. H. J. F. Jr., son and only heir at law of the decedent, instituted suit in the circuit court of the United States to set aside the will and on the 21st day of January, 1885, a decree was entered by said court annulling and setting aside the will and directing the trustees named in the will to convey all the real estate of which H. J. F. died seized to the plaintiff H. J. F. Jr., which they did on the 10th day of February, 1885, by deed of that date; on the 24th day of July, 1885, H. J. F. Jr. and his wife conveyed 300 acres of the said real estate to L. P. who entered into possession of and held the same, farming it, putting improvements upon it and paying the taxes thereon. On the 11th day of June, 1890, the children of P., three of whom were infants, the other two having then recently reached their majority, filed their bill of review and caused the decree of January 21, 1885, to be reversed and annulled. *Held:* the title of L. P., he being a purchaser for value without notice, is not affected by such reversal. (p. 122.)

2. ADVERSE POSSESSION—*Bona Fide Purchaser.*

   L. P. being a purchaser for value without notice held possession adversely and was not a co-tenant with the claimants under the will of H. J. F. (p. 130.)

3. APPEAL—*Reversal—Effect—Rights of Third Persons.*
   Rights, acquired *bona fide* by a third party under a final decree rendered by a court of competent jurisdiction, are not affected by a subsequent reversal thereof. (p. 133.)

4. EQUITY—*Bill of Review—Nature of Remedy.*
   The decree being final, the bill of review is a new suit having for its object the correction of the final decree in the former suit. (p. 133.)

5. JUDGMENT—*Foundation in Pleading.*
   A decree to be valid must be based upon proper pleadings, without which it is void. (p. 136.)

Appeal from Circuit Court, Wood County.

Suit by Elma Perkins and others against Lewis Pfalzgraff and others.    From a decree for plaintiff, defendants appeal.
                                                        *Reversed.*

CAMDEN & PETERKIN, for appellant.

DAVE D. JOHNSON, for appellees.

McWHORTER, PRESIDENT:

Henry J. Fisher died in 1883, leaving a will devising and bequeathing his whole estate, real, personal and mixed, wherever situated, to Charles E. Hogg and L. F. Campbell in trust for the uses and purposes named in the will, providing therein for a small support for his son Henry J. Fisher who was his only heir-at-law.    The 3rd clause of his will is as follows:

"Third.    And in case my said son shall die without lawful issue, I desire that his widow be comfortably supported out of my estate, during widowhood, and the residue of my estate, that is not required for a comfortable support of my son's widow, during her widowhood as aforesaid, I desire to be disposed of as follows: One-fourth thereof to Mrs. Henrietta Fowler, my natural daughter; one-fourth thereof to the lawful children of Nicholas Perkins, by his present wife; one-fourth thereof to the children of John Heisner, deceased, of Gallipolis, Ohio; and the remaining one-fourth to the children of my sister, Sophia Choen." He added to the will a codicil on the 25th of January, 1883, as follows: "I hereby revoke the bequests made by me to the children of John Heisner, deceased, of Gallipolis, Ohio, and also the bequests made

by me to the children of my sister, Sophia Choen, contained in my will dated January the 20th, 1879."

In April, 1884, Henry J. Fisher, Jr., instituted a suit in chancery in the United States Circuit Court for the District of West Virginia, under the title of Henry J. Fisher, Jr. vs. Eliza S. Fisher, widow of Henry J. Fisher, Sr., deceased, Charles E. Hogg, L. F. Campbell, executors of the will and trustees of the estate of the testator, Henrietta Blackburn, Nicholas Perkins and Susan Perkins, his wife, Elma Perkins, Shelby Perkins, Lila Perkins, Mary Perkins, and Eugene Perkins, for the purpose of having the will of his father declared null and void for the reason as alleged by him that it created a perpetuity. Such proceedings were had in said cause that on the 21st day of January, 1885, a decree was rendered therein, setting aside and holding for naught the said will, and directing the said Charles E. Hogg and L. F. Campbell to convey by proper deed of conveyance all the real estate of which the testator died seized to the plaintiff Henry J. Fisher, and that they transfer and deliver to him all the other property, and inhibiting and restraining said Hogg and Campbell from exercising any office or power or doing any act as such trustees except in making and conveying and transferring the said real estate and other property and decreed that the said Hogg and Campbell, executors of the said last will and testament, pay the costs of the suit out of the goods and chattels in their hands unadministered. On the 10th day of February, 1885, the said trustees under and by virtue of said decree conveyed to the said Henry J. Fisher, by deed of that date, all the real estate which came to them by virtue of the said will. On the 24th day of July, 1885, Henry J. Fisher and his wife, Maria P. Fisher, conveyed to Lewis Pfalzgraff a tract of 300 acres of land in Wood county, part of the land of which his father had died seized, and which was conveyed to said Henry J. Fisher by said trustees. Said Pfalzgraff at once took possession of said tract of land under his purchase from Fisher and wife and continued in the possession thereof ever after. On the 11th day of June, 1890, more than five years after the final decree had been entered annulling and setting aside the will of the senior Fisher, a bill of review was filed by Elma Perkins, Shelby Perkins, Lila Perkins, Mary Perkins, and Eugene Perkins, the last

three being infants suing by their next friend Nicholas Per-
kins, seeking to review the final decree entered by the Unit-
ed States Circuit Court on the 21st day of January, 1885. A
demurrer to the bill of review was interposed by the defend-
ant Lewis Pfalzgraff and others of the defendants which de-
murrer was sustained. An appeal was taken by the plain-
tiffs in the bill of review from the decree sustaining the de-
murrer thereto. On the 16th day of March, 1894, the de-
cree of the lower court was reversed by the Circuit Court of
Appeals of the United States and the cause remanded. While
the case was pending on a bill of review Maria P. Fisher,
widow of Henry J. Fisher, Jr., filed her petition praying
that she might be allowed a comfortable support out of the
estate if the will should be decreed to be valid. When the
case on the bill of review was remanded to the court below
Maria P. Fisher suggested the death of Henry J. Fisher, the
plaintiff in the original bill, and on her motion the same was
revived in her name as sole devisee of Henry J. Fisher, de-
ceased; and the causes were further heard together and upon
the petition of Maria P. Fisher and upon her motion by coun-
sel, and upon motion of the Ohio River Railroad Company
by its attorneys, the cause was referred to John T. Harris to
take, state and report to the court an account showing the
real estate of which the senior Fisher died seized and who
claimed to be the present owners of such estate and under
what title they claimed, and the fair rental value of each
tract of land, or house and lot, of which the said senior Fish-
er died seized, and what had been the yearly rental value of
each of said tracts or lots for each year since his death, the
annual rental value of each of said tracts of land or houses
and lots at the time of taking the account, the value of the
improvements made upon said land or lots or any of them
since the death of said senior Fisher, by whom made and
what increase in rental value had resulted from such improve-
ments, and what the present *pro rata* rental value of such im-
provements, and the age of the widow of Henry J. Fisher,
Jr., and what would be the sum necessary to her comfortable
support during her widowhood, and what personal estate if
any came to the hands of the executors and trustees Hogg
and Campbell, and what disposition was made of the personal
estate. The commissioner filed his report showing the real

estate of which the senior Fisher died seized, among which. was a tract of 300 or 322 acres so conveyed to defendant. Pfalzgraff and that said Pfalzgraff claimed title to said tract, under the said deed from Henry J. Fisher and wife; that the rental value of that tract was $150.00 a year and that the average rental value for every year since the elder Fisher's death had been $125.00; that Pfalzgraff's improvements on said tract were of the value of $1,500.00 and that he had paid on the tract during the time in taxes $468.51.    On the 20th. of February, 1897, a decree was entered in the original suit, and upon the bill of review of the Perkinses based upon the report of the commissioner ascertaining the amount necessary for the support of Maria P. Fisher, widow, to be $700.00 the proportion of which assessed against the Pfalzgraff tract. being $45.85 a year, and charged the several parcels of land the amounts decreed against them to be paid as an annual charge from June 18th, 1887, the date of the death of the husband, and fixed the First day of January in each year beginning with the First day of January, 1888, as the time of payment; and decreed the plaintiffs, the Perkins children, to be the owners in fee simple of the undivided fourth interest. in all of said lands, and likewise the said Henrietta Blackburn (formerly Fowler) the like interest of one undivided fourth, charging each of said fourth interests with the proper proportion of rents, improvements and taxes, an annual compensation to the widow Maria P. Fisher, and reserving to the said Perkinses and Blackburn, the owners the undivided two-fourths, to apply to the court for relief in obtaining partition and possession of their said several interests in said real estate "or they must have leave to apply to the proper court of the several counties wherein said real estate is situated for said relief in obtaining partition and possession according as they may be advised; and leave is likewise reserved to any of the parties in interest to litigate any question of title or ownership that may have arisen pending this suit."

This decree was appealed from to the United States Circuit. Court of Appeals by the defendant Lewis Pfalzgraff and the Ohio River Railroad Company and Maria P. Fisher, who had filed a petition in the cause, which court of appeals on the 8th day of May, 1902, rendered its decision and ordered "that so much of the petition of Mrs. Maria P. Fisher as re-

dates to the appellant, the Ohio River Railroad Company and Lewis Pfalzgraff be dismissed and that in all other respects the decree of the court below be affirmed." See 115 Fed. Rep. 929.

At the July Rules, 1889, Elma Perkins and others, as own-ers of the one undivided fourth in said lands filed their bill in equity in the circuit court of Wood county against Lewis Pfalzgraff, C. E. Hogg and L. F. Campbell, executors and trustees under the will of the senior Fisher, Maria P. Fisher and Henrietta Blackburn as defendants, praying for partition of the said tract of 300 acres of land giving to plantiffs one-fourth, to the defendant Henrietta Blackburn one-fourth, or with the consent of Blackburn that one-half of said land be set off to plaintiffs and Blackburn jointly, and the remaining half to Pfalzgraff; and praying that Pfalzgraff be required to account for and pay to them one-fourth part of all the rents and profits realized by him, and that the account for the rent, profits and income from said property be fully set-tled and adjusted so as to give to plaintiffs one-fourth of the net proceeds and to Blackburn one-fourth. Pfalzgraff filed his answer denying that plaintiffs and Blackburn were joint owners in fee simple with himself in said tract of land, and alleging the final decree entered of January 21st, 1885, set aside the said will, and that by deed of July 14th, 1885, upon the conveyance of said tract to him by Fisher and wife he immediately took possession under said deed and had had un-disputed, continuous, adverse possession thereof to the pres-ent time claiming title adverse to the world under said deed, and had paid all taxes charged and chargeable thereon since 1885 and that the land had not been entered on the land books of Wood county or elsewhere in the name of any other per-son or persons, or in the name of the estate of Henry J. Fisher Sr. since or anyone for him since the year 1885, and that no one had paid any taxes thereon since that year except himself; that more than five years after said final decree the Perkinses, defendants in the original suit, filed their bill of review in said cause in the United States Circuit Court mak-ing Maria P. Fisher and Henrietta Blackburn and respond-ent among others parties defendant thereto praying the rever-sal of the said decree; averring that he was an innocent pur-chaser of said land for value, that he had no actual notice and

was not charged with constructive notice of any intention to file a bill of review, that he became a complete purchaser for value and without notice of any such intention after said final decree was rendered in the original cause, and the rights of the plaintiffs and the defendant Blackburn against him had been lost to them by their failure and delay for more than the period prescribed by law to file a bill of review or to appeal from said decree, and that their right and title to any part of said land was *res adjudicata* upon which forfeiture for non-entry on the land books and charged with the taxes for the past fourteen years; and relying upon his open, notorious, exclusive, adverse possession of the land, claiming title to the whole under his deed from the year 1885, which was a bar by the statute of limitation.   Upon the filing of said answer plaintiffs filed their amended bill alleging that by virtue of the proceedings had in the United States Circuit Court in the original case and upon their bill of review plaintiffs' right and title to said land had been fully adjudicated and established as was also the title of Blackburn; that plaintiffs and Blackburn were parties to the original suit, afterwards filed their bill of review therein; that when the bill of review was filed in the Circuit Court of the United States plaintiffs were minors under twenty-one years and by reason of their minority were not barred to file their said bill of review; that Pfalzgraff was interpleaded in said bill and that he appeared and filed demurrer to the same which was sustained.   Plaintiffs appealed and the decree was reversed in the United States Circuit Court of Appeals and plaintiffs set up the decree of the 20th of February by the Circuit Court of the United States after the cause was remanded, and exhibited a copy thereof with their amended bill; that Pfalzgraff being a party defendant was bound by the decree and estopped from denying either the title of plaintiffs or of Blackburn, and whether or not said bill of review was properly allowed and heard in the United States Court and whether said Blackburn had any legal standing in said court in said bill of review were matters *res adjudicata* and could not be inquired into here; that Pfalzgraff was not an innocent purchaser but had full knowledge and advice of the title and full knowledge of the action of the United States Circuit Court; that said conveyance by Fisher oper-

ated only to convey to Pfalzgraff a one undivided half interest in said land; that the statutes of limitation did not run against them, that they and Blackburn by virtue of the will had been tenants in common as to said tracts of land both with Fisher Jr. and his grantee Pfalzgraff, and that Pfalzgraff had no valid or legal title to the land except as to the one undivided half; and plaintiffs and Blackburn had never been ousted of their title and rights therein; and prayed that the rights of plaintiffs and Blackburn be fully settled and adjusted and that the relief prayed for in the original bill be accorded them. Pfalzgraff filed an answer denying all the material allegations of the amended bill, and averring that the decision of the lower court referred to in the amended bill was a decision rendered upon a demurrer to the bill of review filed by the plaintiffs and that the effect of said decision was to determine simply that the will of the senior Fisher was a good and valid will, and to determine further as a mere abstract proposition of law without the facts relating to the title of respondent being before the court by answer or otherwise; that under the terms of said will plaintiffs were entitled to one-fourth of the estate of Fisher, deceased, and Blackburn to one-fourth; that when the case was remanded for further proceedings said cause was referred to a commissioner upon a motion of Maria P. Fisher for the purposes hereinbefore set forth; that prior to June 29th, 1896, while the case was still pending before the commissioner several parties whose interests were identical with the interests of respondent and who were purchasers of parts of the real estate after the final decree had been rendered and the cause dismissed, filed answers in same cause setting up the facts in regard to their purchases and showing that they were innocent purchasers for value of said land after said decree was rendered and before an appeal from or bill of review to said final decree was taken or filed, and on the 15th day of January, 1897, the plaintiffs in the bill of review moved the court to strike out the several answers on the ground that the United States Court had no jurisdiction to determine the issue arising thereon because as to said respondents and said plaintiffs they were matters arising between citizens of the same state, which motion remained unheard and undetermined until the 27th day of June, 1889, then respondent referred to the de-

cree of February 20th, 1887, wherein it was adjudged in conformity with the mandate of the United State Court of Appeals that the complainants were jointly seized and declared to be owners in fee simple of one undivided fourth part of the real estate of the senior Fisher, and that Henrietta Blackburn was entitled to a like interest as owner in fee; and that by the terms of said decree leave was expressly reserved to any of the parties in interest to litigate any question of title or ownership that might have arisen pending said suit; that on the 29th day of June, 1898, respondent filed his answer in said cause alleging that he was an innocent purchaser for value of the land claimed by him after said final decree and before any appeal from or bill of review to said final decree, and stating what he claimed to be other good and lawful defenses to the claim of plaintiffs and Blackburn; and on the 27th of June, 1899, plaintiffs in the bill of review renewed their motion to strike out the several answers thereto, when the court without passing upon the question of jurisdiction was of opinion to and did relegate said matters in difference to the state courts without prejudice to the rights of the several respondents, and the answers were stricken out and it was expressly provided that nothing in said order, nor in the orders formerly entered should prejudice the rights of respondents in said several answers as to any relief they might seek in said state courts in reference to title acquired subsequent to the title vested and conferred by the will of the senior Fisher, or to the other interests acquired since the institution of the original suit in that court, and denied that plaintiffs' and Blackburn's right and title to the real estate were fully adjudicated and established by any decree of the United States Court as against respondent, but that the court refused to take jurisdiction of the question and on motion of plaintiffs the pleadings raising the said issue were stricken out of the cause pending in said court and the question was especially relegated to the state courts and all rights of respondents were reserved without prejudice to him; and denying that Blackburn filed either jointly or separately a bill of review to the final decree of the United States Court annulling the will of Fisher as alleged in the amended bill; alleged that there was no record of any such answer and craved oyer of said record, and averred a fatal variance in that respect between the record and the said amended bill.

This cause was heard on January 16th, 1903, upon the original and amended bills and the several answers and the agreement that the printed record of the proceedings in the United States Court should be considered. It was decreed that said plaintiffs had good and valid title to an undivided fourth interest in the 300 acres of land conveyed by Fisher and wife to Pfalzgraff, and that Blackburn had good and valid title to a like undivided fourth therein, and that Pfalzgraff had a valid title to the remaining undivided half; that the plaintiffs and Blackburn were entitled to have partition of the said land and their interests set apart to them, and commissioners of partition were appointed and the cause was referred to a commissioner to take, state and report the rents and profits received by Pfalzgraff out of the farm since the same was conveyed to him by Fisher and wife, including a reasonable charge for annual rent value thereof to said Pfalzgraff to be charged in lieu of rent, an account of all taxes paid on said land by Pfalzgraff, and of the permanent improvements made thereon by him and the value thereof. From this decree Pfalzgraff appealed to this Court assigning as error that he was not held to be an innocent purchaser for value of the whole estate of land in question after final decree had been entered in the United States Court in the original cause setting aside the will; and because the evidence showed that he had been in uninterrupted, exclusive, adverse possession of the land from July, 1885, down to the institution of this suit in 1899, and that it should have been so held that the title of the senior Fisher, deceased, under whom the plaintiffs' and Blackburn's claim was forfeited to the State of West. Virginia for non-entry on the land books for five successive years since 1863. Several other alleged errors are assigned, but these, if well taken, settle the principles of the case and give appellant good title to the tract of 300 acres of land in controversy. Whether appellant was a *pendente lite* purchaser of the said tract of land, or whether he was a *bona fide* purchaser for value without notice is the crucial question to be decided in this case, and if he was such *bona fide* purchaser the other errors assigned become immaterial. There are two conflicting lines of decisions in the courts of the states of this country touching the doctrine of *lis pendens*, some holding that a suit or action at final judgment or decree

in the court of original jurisdiction is the end of that litigation so far as the subject matter of the litigation is concerned, and that a writ of error and *supersedeas*, or an appeal and *supersedeas* is a new action or suit, a new litigation; while on the other hand others hold that the writ of error, or appeal is a continuation of the same suit. Among the many authorities holding the last mentioned doctrine are those of Kentucky and Texas and some others which it is not necessary to here cite as the weight of authority, at least with us, especially since recent decisions of this Court, is the other way, this Court taking the more equitable view of the matter in the construction of our statutes relating to appeal. Why should a purchaser in good faith, be held to be a *pendente lite* purchaser after final decree and after those having a right to appeal have declared by their acts their acquiescence in and full purpose to abide by the decree, while others having a contingent interest therein and whose interests were overthrown by the decree took no steps by way of appeal, bill of review or otherwise within a reasonable time to assert their rights and correct the error if any there was?

By the will of Henry J. Fisher, Sr., Chas. E. Hogg and L. F. Campbell were made executors of the will, and trustees of all the estate of the testate decedent; that after the final decree of January 21st, 1885, rendered by the Circuit Court of the United States and in pursuance thereof the said trustees on the 10th day of February, 1885, conveyed by deed duly executed all the real estate which came to their hands as such trustees by virtue of the said will, to the plaintiff in said original suit to set aside the will. In this act on the part of the trustees in executing the mandate of the decree notice was given that it was not their purpose to appeal from said decree but that they regarded the same as final and binding on all parties thereto. These trustees represented all parties in interest and were the proper parties to appeal in case they deemed themselves or those whom they represented aggrieved by the decree; they not only failed to appeal or file a bill of review but accepted and acquiesced in the decree as final and declared their purpose not to contest the validity of the decree by carrying out its provisions as far as it required action on their part by conveying to the plaintiff Fisher all the real estate over which, by the will, they were given control.

Section 8, chapter 132, Code 1899, provides that "If a sale of property be made under a decree or order of a court, and such sale be confirmed, though such decree or order be afterwards reversed or set aside, the title of the purchaser at such sale shall not be affected thereby; but there may be restitution of the proceeds of sale to those entitled." While the conveyance in this case was not after a judicial sale, yet the conveyance was made by the trustees Hogg and Campbell in obedience to a decree of a court having jurisdiction, by this act the trustees estopped themselves from contesting the decree by appeal or bill of review, and their act was notice to purchasers from Fisher that it was not the purpose to appeal from said decree. *Elwell* v. *Fosdick*, 134 U. S. 500, was a case in which the holder of $14,500.00 out of $955,000.00 of railroad bonds secured by mortgage appealed from the Circuit Court of Appeals to the Supreme Court of the United States in the name of the trustee in the mortgage and from a decree which it was claimed affected the interest of such holder. It appeared that sometime before the appeal was taken the trustee had executed a release of his right to appeal and of errors in the decree and that the court had in the decree found that there was no proof showing that the trustee had not acted in good faith. It was "*Held*: that the release bound all the bondholders represented by the trustee; * * * that the appeal was the appeal of the trustee; and that, on the motion of the appellee, it must be dismissed." In case at bar, there is no appearance or even intimation of bad faith on the part of the trustees, indeed their personal interests were not conserved by the final decree but would have been by its reversal. Pfalzgraff purchased from Fisher and wife after final decree and after the conveyance to Fisher thereunder by the trustees Hogg and Campbell of the land in controversy and entered immediately into possession thereof under his said deed and purchase from Fisher and continued in uninterrupted, exclusive possession thereof paying taxes thereon. In *Wingfield* v. *Neall*, decided at the present term of this Court, it is held, syllabus, point 2: "Under our statute, an appeal from a circuit court to the Supreme Court of Appeals, is the beginning of a new, and not a continuation of an old suit." And point 3, same syllabus: "One who, after final decree and termination of the suit, and before an ap-

peal is obtained, purchases in good faith, property which is the subject of litigation, will be protected in such purchase." And point 4: "In determining the question as to whether or not a purchase is made *pendente lite*, the test is, was there, at the time of the purchase, a suit pending, involving the rule, *lis pendens*. If so, the purchase is *pendente lite*. It is otherwise if there is no such suit pending." And in *Dunfee* v. *Childs*, also decided at the present term, point 9 in syllabus, it is held: "A suit as a *lis pendens* ends with final decree. A bill of review or appeal to reverse such decree is a new *lis pendens* as regards purchasers claiming title under the decree, and is not a mere continuation of the original suit."

It would seem that these late decisions of our own Court would be sufficient on this question of *lis pendens* without going farther. In 3 Cyc. 462, it is said: "Rights acquired *bona fide* by a third person under a judgment, order or decree rendered by a court of competent jurisdiction are not affected by the subsequent setting aside thereof;" citing as authority therefor cases from Florida, Illinois, Louisiana, New Hampshire, New York and United States Supreme Court. See also for much authority on this point 3 Cent. Dig., sec. 4631. In *Clayton* v. *Anthony*, 15 Grat. 518, Judge Lee, in delivering the opinion of the Court, at page 526, referring to the case of *Creasy* v. *Anthony*, heard with the case first mentioned, says: "A bill of review forms no part of the proceedings in the original cause, it is allowed only after the suit is completely ended." Judge Cabell in *Laidley* v. *Merrifield*, 7 Leigh 346, at page 354, says: "The decree being final, the bill of review is not regarded as a part of the cause of which the decree was rendered, but as a new suit having for its object the correction of the decree in the former suit." In *Keck* v. *Allender*, 37 W. Va. 201, at page 210, it is said: "A bill of review forms no part of the proceedings in the original cause but is offered after the suit is completely ended." In *American Bible Society* v. *Hollister*, 1 Jones Eq. 10, Judge Pearson, at page 13, says: "To call a bill of review an incident of a former suit requires some latitude of expression." *Ellzey* v. *Lane*, 2 Hen. & Mun. 589: "A bill of review can not be brought until the decree sought to be reviewed and reversed is final and the parties out of the court."

See also *Rector* v. *Fitzgerald*, 59 Fed. Rep. 808; 2 Cyc. 510; *Taylor* v. *Boyd*, 3 O.337, 17 Am. Dec. 603. In 115 Fed. Rep. in the case of *Ohio River Railroad Company* v. *Fisher*, at page 934, where the same matter was involved as to Lewis Pfalzgraff as in the case at bar, Judge Simonton, in rendering the opinion of the court, uses the following words: "The conclusion we have reached in this case renders unnecessary a discussion in detail of the first of these assignments of error. The Ohio River Railroad Company and Lewis Pfalzgraff are *bona fide* purchasers for valuable consideration, without notice, from H. J. Fisher, Jr., after final decree declaring his father's will invalid and recognizing his right as heir at law, and after a decree directing the trustees and executors named in the will to convey to him the realty and deliver to him the personalty. This decree, filed January 21, 1885, invested H. J. Fisher, Jr., with all the evidence of an absolute title. Then these appellants purchased, paid their money, entered into and remained in possession of the realty thus acquired. 'No equity can be stronger than that a purchaser who has put himself in peril by purchasing for valuable consideration without notice of any defect in the title.' *Boone* v. *Chiles*, 10 Pet. 177, 9 L. Ed. 388. How are they affected, as respects the rights of Mrs. Maria P. Fisher, by the bill of review filed in 1890, several years after their purchase? In *Rector* v. *Fitzgerald*, 8 C. C. A. 277, 59 Fed. 808, we find this: A bill of complaint had been filed by R., and a final decree had been entered May 2, 1881, dismissing the bill. R. appealed from the decree, but failed to prosecute the appeal, and it was dismissed December 6, 1881. On February 29, 1884, one F. took a mortgage on lands, the subject matter of the litigation, from one who had purchased from successful party. On April 29th thereafter R. filed his bill of review, to which he made F. the mortgagee, and his mortgagor parties. He sought to reverse the former decree for error appearing on the record. F. pleaded his equity as a *bona fide* purchaser without notice. After a full and elaborate discussion, the court held that the purchaser without notice *bona fide*, after a final decree in favor of his grantor, had a title which could not be affected by a decree rendered on a bill of review subsequently filed; that a bill of review will not be regarded as a continuation of the

original suit, so as to affect a person purchasing the property in controversy in good faith from the successful party, after a final decree and without notice of any intention to file a bill of review. This case cites *Ludlow's Heirs* v. *Kidd's Ex'rs*, 3 Ohio 541. Certain infants filed a bill to obtain the legal title to certain lands. The bill was dismissed on final hearing. The defendants, who were in possession of the land and had an apparent legal title, sold the same to third persons, strangers to the suit. A statute of Ohio allowed infants five years after attaining majority to bring a bill of review in cases of this character. The complainants availed themselves of this statutory right after becoming of full age, and prayed a reversal of the original decree. It was held, after a careful scrutiny of the authorities, that the intermediate purchasers were not affected by the decree of reversal."

It is contended by appellees that the decree of the United States Circuit Court of February 20th, 1897, is final, adjusting the rights of the plaintiffs in the bill of review and Henrietta Blackburn and that the same was binding on defendant Pfalzgraff. When Pfalzgraff and other defendants filed their answers to the amended bill of review asserting their rights as against the allegations of the said bill, plaintiffs moved to strike out said answers, which the court did on the 27th of June, 1899, being of opinion that there might be a question as to whether the court had jurisdiction of the matters and things alleged in said several answers and without passing upon the question of such jurisdiction, the court was of opinion to relegate said matters in difference to, the state courts which had jurisdiction thereof "and without prejudice to the rights of the several respondents, it is ordered that the said answers be stricken out, but nothing in this order, nor in the orders formerly entered herein shall prejudice the rights of the respondents in said several answers as to any relief they may seek in said state courts with reference to title acquired subsequent to the title vested and conferred by the will of Henry J. Fisher, Sr., or as to other interests acquired since the institution of the original suit in this court." The decree of February 20th, 1897, also reserved to any of the parties in interest the right to litigate any question of title or ownership that might have arisen pending the suit. Thus leaving open the questions to be litigated between the

plaintiffs and Pfalzgraff and the other defendants occupying like positions. The Circuit Court of Appeals in its opinion in *O. R. R. Co.* v. *Fisher*, holds that the decree of February 20th, 1897, was not a final decree and it does not appear from the record that the suit in the United States Circuit Court was ever prosecuted to final decree. The decree annulling the will was reversed and the court proceeded to state where the property would go under the provisions of the will, but it could not be an adjudication of the rights of the plaintiffs and Blackburn and Pfalzgraff as between themselves as the matter had never come to an issue between them. There being no pleadings between Blackburn and Pfalzgraff there could be no decree. "A decree not supported by any pleading in writing is void." *Lilly* v. *Claypool*, decided at the present term of this Court; and see authorities there cited. The plaintiffs claimed that defendant Pfalzgraff could not be heard by answer for want of jurisdiction in that court, and the court, without passing on that question, struck out the answers and distinctly and definitely relegated any issue that might be made to the state courts, leaving no issue to try in the United States Court as between plaintiffs and Blackburn and Pfalzgraff, and it does not appear from the record that Blackburn ever either appealed from the original decree of January 21st, 1885, or filed a bill of review to correct the same.

For the reasons herein stated the decree of the circuit court of Wood county must be reversed and plaintiffs' bill dismissed.

*Reversed.*

BRANNON, JUDGE, (*concurring*):

It will not do to say that Pfalzgraff is a *pendente lite* purchaser. He bought after decree and before bill of review. When he purchased there had been final decree, and not yet a bill of review. "During the interval between final judgment and commencement of proceedings in error, there is no suit pending, and a purchaser in good faith does not take title *pendente lite*." *Cheever* v. *Minton*, 13 Am. St. R. 258. The bill of review must have its own notice. It does not relate back. 2 Cyc. 510; Bennett on Lis Pendens, sections 40, 70; 21 Am. & Eng. Ency. L. (2 Ed.), 618; Barton's Chy. Prac.

331; *Rector* v. *Fitzgerald*, 59 Fed. 808; *Taylor* v. *Boyd*, 17
Am. Dec. 603; 9 Am. & Eng. Dec. in Eq. 14. There are a
few cases contrary, but such is the great weight of authority.
See *Dunfee* v. *Childs*, decided this term, where many cases
are discussed.

### PFALZGRAFF A PURCHASER FOR VALUE.

If Pfalzgraff's title be considered as emanating from or
resting on the decree setting aside the will of the elder Fish-
er, and I think it is to be so considered, then I hold that his
title cannot be affected, by reversal of that decree for another
view, that is, because he has the defence of a *bona fide*
purchaser. With that decree setting aside the will standing,
Fisher's title, coming from the elder Fisher, would be good;
with that decree reversed, it would not be good. It stands
on that decree. As a purchaser for valuable consideration
without notice, it is old equity law that equity will not do
anything against him, because two persons equally unfortu-
nate, equally meritorious, are praying to it, and its hand
touches neither, but it leaves them as they came, interfering
not at all. A purchaser under a decree afterwards reversed,
if he is not a party, is protected from reversal. Code, chap-
ter 132, section 8. Why, on this same principle, should not
a purchaser from him be protected? A *bona fide* purchaser
from a fraudulent grantee has always been protected, though
the title acquired by such purchaser was tainted with fraud,
and a bad title in the hands of its first owner. I assert that
the true rule is, that one who purchases from a party who
held under a decree afterwards reversed, is not affected by
such reversal, if he is a complete purchaser. 3 Cyc. 462;
*Bank* v. *Bank*, 6 Peters 8; *Galpin* v. *Page*, 18 Wall p. 375;
*Rorer* on Jud. Sales, section 1142; *McJilton* v. *Love*, 13 Ill.
486, 54 Am. Dec. 449; *Read* v. *Howe*, 39 Iowa 554, pt. 7 and
p. 561; *Lovett* v. *German Church*, 28 Am. Dec. 37; *Dater*
v. *Troy*, 2 Hill 629; *Volger* v. *Montgomery*, 54 Mo. 577;
*Davis* v. *Watson*, 54 Miss. 679; *Benjamin* v. *Guiteau*, 47
Ill. 433. Such protection to one purchasing from a party to
the suit is not only in cases where there is a judicial sale, but
it is also where it is the decree that gives title to the
party who, before its reversal, conveys to a *bona fide* pur-

chaser. A decree gave a wife title to land held by her husband, because he held in trust for her, and intermediately between the decree and its reversal, she conveyed to a third party, and it was held that a reversal of the decree did not affect her grantee's title. *Hanna* v. *Hanna*, 110 Ill. 53. "Where after a decree quieting title to real estate in a party he conveys to a *bona fide* purchaser, no appeal bond having been filed, a subsequent reversal of such decree will not affect the purchaser." *Parker* v. *Courtnay*, 26 Am. St. R. 360. There is much authority for this position. *Taylor* v. *Boyd*, 3 Ohio 337, 17 Am. Dec. 603, a well considered case, holds that, "The party thus invested (by decree) with title and possession conveyed to a third person, who stands before the court as an innocent purchaser for valuable consideration, without notice. Can his right be devested by a reversal of the decree on which his title was originally founded? We are of the opinion that he cannot be so devested." Boyd sued Taylor for a deed for land, and obtained a decree. Taylor then brought a writ of error. Boyd conveyed to another person after the writ of error, but before citation in it. The title of the purchaser was held good against reversal. The court also said that the writ of error was a new suit, and the purchaser did not purchase *pendente lite.* Other cases so hold. *McCormick* v. *McClum*, 39 Am. Dec. 441. In *McAuslan* v. *Pundt*, 93 Am. Dec. 358, the court referred to the rule that a derivative title is not better generally than that from which it is derived, and said that the rule was subject to many exceptions, one exception being that an innocent purchaser is protected from a reversal of a decree. See note on *Little* v. *Bunce*, 28 Am. Dec. p. 371. (The other view is stated in *Singly* v. *Warren*, 63 Am. St. R. 896.) I regard *Wadham* v. *Gay*, 73 Ill. 415, strong authority in this case. A will was thought to give Flagler a fee, and a decree so held. Flagler sold and conveyed while the decree stood. Later the decree was reversed, and it was held that Flagler had only a life estate. In a suit about the title the supreme court of Illinois held that the reversal did not affect Flagler's grantees, as they were purchasers for value. Though there are some Kentucky and Texas cases otherwise, they are against the current of authority.

### PFALZGRAFF IS NOT A PENDENTE LITE PURCHASER.

We can safely say with Judges Lee and ENGLISH in *Clay-tor* v. *Anthony*, 15 Grat. p. 526, and *Keck* v. *Allender*, 37 W. Va. 210, that "a bill of review forms no part of the proceedings in the original case." "It is a new suit," said Judge Cabell in *Laidley* v. *Morrifield*, 7 Leigh 353. This is because the old suit had ended by final decree. *Lynch* v. *Andrews*, 25 W. Va. 571, does not show Pfalzgraff a *pendente lite* purchaser. The decrees were not final, as the court held them expressly to be interlocutory, as appears in *Camden* v. *Haymond*, 9 W. Va. 680 and 22 W. Va. 184, 188.

### PFALZGRAFF'S TITLE GOOD BY DECREE.

*Another matter.* The decree of the circuit court of appeals is said to settle that the plaintiffs have right to half of Pfalzgraff's land, and that his deed from Henry J. Fisher gives him but half. The petition of Mrs. Fisher sought a support out of this and other lands on the theory that the elder Fisher's will charged the land with her support. The decree charged the land with her support. It also reserved the right to the plaintiffs to ask partition in the state courts, there being some lands, besides that sold to Pfalzgraff, to which those claiming under the will would, as between themselves, have right to partition. This did not adjudicate right to partition, and surely did not hold that those claiming under the will had right to partition of the Pfalzgraff tract. The decree only reserved any right to partition that might exist. Moreover, the decree contained a saving clause in these words: "And leave is likewise reserved to any of the parties in interest to litigate any question of title or ownership that may have arisen pending the suit." That clause saved Pfalzgraff from the effect of that decree, save only the charge made by it on the land for Mrs. Fisher's support. He could contest "title and ownership" unaffected by the decree. On appeal that decree was reversed so far as it charged Pfalzgraff's land for Mrs. Fisher, and dismissed her petition, leaving the balance of the decree still firm, including that saving clause. Thus that decree by no means takes Pfalzgraff's title from him. But to the contrary, does not that decree hold Pfalzgraff's title superior to the rights of those claiming under the will? If it is not *res judicata* to establish Pfalzgraff's title, the principle of the decision of

the circuit court of appeals inevitably leads to that result. Mrs. Fisher filed a petition setting up that the will charged the land for her support. Her whole claim rests alone on that same will. The court took away from her the charge made on the land by the decree and dismissed her petition as to Pfalzgraff. Why did it do so? We find the reason stated in *Ohio River R. R. Co.* v. *Fisher*, 9 Am. & Eng. Dec. in Eq. 1, 9, 115 Fed. 929. "The Ohio River Railroad Company and Lewis Pfalzgraff are *bona fide* purchasers for valuable consideration, without notice, from H. J. Fisher, Jr., after a final decree declaring his father's will invalid, and recognizing his right as heir at law, and after a decree directing the trustees and executors named in the will to convey to him the realty and to deliver to him the personalty. This decree, filed January 21, 1885, invested H. J. Fisher, Jr., with all the evidence of an absolute title. Then these appellants purchased, paid their money, entered into and remained in possession of the realty thus acquired. "No equity can be stronger than that of a purchaser who has put himself in peril by purchasing for valuable consideration without notice of any defect in the title." *Boone* v. *Chiles*, 10 Pet. (U. S.) 177, 9 L. Ed. 388. How are they affected, as respects the rights of Mrs. Maria P. Fisher, by the bill of reviews filed in 1890, several years after their purchase? In *Rector* v. *Fitzgerald*, 8 C. C. A. 277, 59 Fed. Rep. 808, we find this: "A bill of complaint had been filed by R., and a final decree had been entered May 2, 1881, dismissing the bill. R. appealed from the decree, but failed to prosecute the appeal, and it was dismissed December 6, 1881. On February 29, 1884, one F. took a mortgage on lands, the subject-matter of the litigation, from one who had purchased from successful party. On April 29, thereafter, R. filed his bill of reviews, to which he made F., the mortgagee, and his mortgagor parties. He sought to reverse the former decree for errors appearing on the record. F. pleaded his equity as a *bona fide* purchaser without notice. After a full and elaborate discussion, the court held that the purchaser without notice *bona fide*, after a final decree in favor of his grantor, had a title which could not be affected by a decree rendered on a bill of review subsequently filed; that the bill of review will not be regarded as a continuation of the original suit, so as to

affect a person purchasing the property in controversy in good faith from the successful party, after a final decree and without notice of any intention to file a bill of review.' This case cites *Lodlow's Heirs* v. *Kidd's Ex'rs.*, 3 Ohio 541." The opinion cites other cases to the same effect. The plaintiffs in this suit and Pfalzgraff were parties before the court in that suit. The bill of review made Pfalzgraff a party and set up his purchase from Henry J. Fisher, and these plaintiffs were parties, and Mrs. Fisher's petition set up her title to support under the will, and the title of the trustees under the will was before the court, and upon the whole record, with all the parties before the court, the circuit court of appeals did decide that Pfalzgraff, by reason of his purchase from young Fisher before the decree annulling the will had been reversed, took good title, and that such reversal did not affect his title, and denied Mrs. Fisher relief against him, stating as a reason therefor, that he was a *bona fide* purchaser. Now, if Mrs. Fisher's claim under the will could not be sustained against Pfalzgraff, how can the claim of the plaintiffs to partition be sustained? Her claim was identical in character with that of the plaintiffs. Both her rights and their rights rest on the will. If the reversal of the decree annulling the will did not affect Pfalzgraff's title as to Mrs. Fisher, how could it affect his title as to other devises? They both stand on the same footing. It is true Mrs. Fisher had joined in deeds of her husband to purchasers, among them the deed to Pfalzgraff, and it is said that the decree against her went only upon the theory of estoppel against her claim arising from those deeds; but under our Code a wife's joining in a deed is no warranty. At any rate, the court gave as the first reason for denying her relief, the reason that Pfalzgraff was protected because he was a purchaser for valuable consideration. If estoppel was a reason for the decree, so is the fact that Pfalzgraff was an innocent purchaser. Both reasons moved the decree; both reasons were involved in the record; both are included in the decision; both are within the *ratio decidendi;* both equally bar plaintiffs from hurting Pfalzgraff.

*Another matter. Limitation.* I think Pfalzgraff is protected by the statute of limitations. We cannot say that he is denied this defence of Henry J. Fisher, his grantor, having

been co-owner with the plaintiff. Fisher conveyed the *entire* tract to Pfalzgraff by deed, and Pfalzgraff went into actual possession. This was an ouster of the co-owner, and the statute began at once to run. *Talbott* v. *Woodford*, 48 W. Va. 449. But it is said that because the decree avoiding the will of the elder Fisher was yet standing when Pfalzgraff purchased, that decree prevented the plaintiff from suing, and that the statute would not begin until the decree was rendered, 7 February, 1894. Pfalzgraff had done everything he possibly could do, everything the law required him to do, to work an ouster so as to have the benefit of the statute. He held possession actual under a deed conveying legal title, claiming against the world. Shall we hold him responsible, and deny him this plea, because of the misfortune which happened to the plaintiff's title from that erroneous decree? He is not chargeable with it. He was no party to that suit. Its decree could not affect him, a stranger to the record, and yet it is sought to take away from him his land just as if he were a party, to bind him by indirection, when he is not directly bound. A right of entry existed the moment Pfalzgraff took possession, regardless of the impediment to the plaintiffs from that decree. An erroneous decree, when reversed, is considered never to have been the law. First Blackstone, 69. Our statute of limitation makes no such exception, and it is familiar law that no exceptions from the statute are allowed but those specified in the statute. The legislature having made certain exceptions, the courts cannot add others. A land owner, to avoid the statute, pleaded that an act of Congress forbade the survey or marking of land within an Indian reservation, and the beginning corner of his land was within the Indian country, and no other corner marked, and he was thus forbidden by the law to make a survey. Chief Justice Marshall said: "The claim of the plaintiffs to be excepted from the act is not based on the character of the defendant's possession, but on the impediment to the assertion of their own title." So I say in this case. "It has never been determined that the impossibility of bringing a case to a succussful issue from causes of uncertain duration, though created by the legislature, shall take the case out of the operation of the statute, unless the legislature shall so declare its will." *McIver* v. *Regan*, 2 Wheaton 25. Angell on Lim.

chapter 37, section 486.   It has been held that an injunction does not stop the statute, unless it makes that exception, nor absence of the defendant so that he cannot be sued.   1 Rob. Prac. 606, 616: Wood on Lim. section 243.   Pfalzgraff did not bring the suit to nullify the will.   That was done and ended by final decree before he had anything to do with the land.   He did nothing to obstruct a suit.   The decree was simply an event for which he was in no wise responsible, and it ought not to affect him.